FILED

NOV - 5 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>                    Plaintiff,<br><br>v.<br><br>HONEY BAKED HAM, INC., a<br>California corporation; and DOES 1-10,<br><br>                    Defendant. | Case No.:  3:20-CV-1627-BEN-AGS<br><br>**ORDER DENYING IN PART AND<br>GRANTING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS**<br><br>**[ECF No. 8]** |

## I.    INTRODUCTION

Plaintiff Chris Langer ("Plaintiff") brings this action for violations of (1) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and (2) Unruh Civil Rights Act, Civ. Code, § 51, *et seq.* ("UCRA"), against Defendant Honey Baked Ham, Inc., a California corporation ("Defendant").  ECF No. 1.

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(1), 12(b)(6), 12(h)(3), and 28 U.S.C. section 1367(c) (the "Motion").  ECF No. 8.

The motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 13.  After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.

## II.   BACKGROUND

### A.   Factual Background

Defendant owns a Honey Baked Ham store in La Mesa, which provides "take out and delivery of hams and ham related products." ECF No. 5 at 1:18-20.

Plaintiff alleges that he is a paraplegic, uses a wheelchair, and requires a specially equipped van with a ramp for mobility. ECF No. 6 at 1:22-26.  Plaintiff further alleges that on July 3, 2020, he went to Defendant's store, located at 5119 Jackson Drive, La Mesa, California 91941 to make some purchases.  *Id.* at 2:27-28.  However, Plaintiff contends that during his visit, he encountered several problems which prevented him from patronizing Defendant's store, including but not limited to (1) a lack of van accessible parking spaces, (2) "massive slopes through the common access aisle," and (3) a common access aisle that was too small to allow him to deploy his van ramp.  *Id.* at 3:5-4:4. Plaintiff pleads that because he "could not safely park at this location, he ended up going to the Honey Baked Ham in Clairemont and made his purchase there." *Id.* at at 4:12-13. Plaintiff also alleges that he "lives 15 minutes from this Honey Baked Ham location and frequents this area on a constant and ongoing basis." *Id.* at at 4:14-15.

### B.   Procedural History

On August 21, 2020, Plaintiff filed his complaint alleging claims for relief for violations of (1) the ADA and (2) UCRA. ECF No. 1.  Plaintiff seeks (1) injunctive relief under the ADA, (2) a statutory penalty in the amount of $4,000.00 under the UCRA, and (3) reasonable attorney fees, litigation expenses, and costs of suit, pursuant to section 52 of the UCRA.  ECF No. 6 at 7:1-8.

Defendant was served with the complaint on August 27, 2020, and on September 9, 2020, timely filed this Motion to Dismiss Plaintiff's Complaint. ECF No. 5.  However, on September 10, 2020, Plaintiff filed a First Amended Complaint, ECF No. 6 (the "FAC"), and Notice of Filing First Amended Complaint in Lieu of Opposing Motion to Dismiss, noting that the "amended complaint supersedes the original complaint and moots [the] pending Rule 12 motion," ECF No. 7 at 1:24-28.  Accordingly, on October 8, 2020,

-2-

this Court issued an order denying Defendant's initial motion to dismiss as moot due to Plaintiff's filing of the FAC. ECF No. 10.

On September 23, 2020, Defendant filed a Motion to Dismiss the FAC pursuant to Rules 12(b)(1), 12(b)(6), 12(h)(3) and 28 U.S.C. § 1367. ECF No. 8. To date, Plaintiff has not filed a response in opposition to Defendants' Motion to Dismiss.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject matter-jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008). "Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019). "As a result, the plaintiff bears the burden of proving that the case is properly in federal court." *Id.*; *see also DRAM*, 546 F.3d at 984 ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").

"A court can only exercise subject matter jurisdiction over a plaintiff's claim if the plaintiff meets constitutional standing requirements." *Rutherford v. Leal*, No. 3:20-CV-0688-GPC-RBB, 2020 WL 5544204, at *2 (S.D. Cal. Sept. 16, 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (providing that the Constitution limits jurisdiction of federal courts to cases and controversies, and "standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan*, 504 U.S.

at 561. "To establish standing, a plaintiff must demonstrate (1) a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress that injury." *Nat'l Family Farm Coalition v. EPA*, 966 F.3d 893, 908 (9th Cir. 2020) (quoting *Pyramid Lake Paiute Tribe of Indians v. Nev., Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013)). The evidence relevant to the standing inquiry consists of "the facts as they existed at the time the plaintiff filed the complaint." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008). "[M]otivation is irrelevant to the question of standing under Title III of the ADA." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017). An ADA plaintiff seeking an injunction requiring a place of public accommodation to comply with the ADA has satisfied the redressability requirement for standing. *Id.*

Even where a plaintiff establishes standing sufficient to make the court's exercise of jurisdiction over federal claims appropriate, the court retains discretion over whether to exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a); *see also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (noting that "[p]endent jurisdiction [over state law claims] exists where there is a sufficiently substantial federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims.") District courts may decline to exercise supplemental jurisdiction over related claims where (1) the related "claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). Further, district courts do not need to "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims

-4-

pursuant to 28 U.S.C. section 1367(c)(1)-(3). *See San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998)).

### B.     Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

## IV.   DISCUSSION

Defendant argues that "[t]he present lawsuit should be dismissed for a trifecta of independently fatal deficiencies: pleading, jurisdictional, and factual." ECF No. 8-1 at

-5-

4:6-7. The gist of Defendant's argument is that the federal court has discretion to decline to exercise supplemental jurisdiction and should do so here because the majority of recent federal ADA cases have been declining to exercise supplemental jurisdiction over pendent state law claims. *Id.* at 4. Defendant also asks the Court to require Plaintiff to make an evidentiary showing under oath, establishing his intent to return to Defendant's business as to the remaining federal claims. *Id.* at 8:9-15. The Court denies Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) on the basis that Defendant failed to argue how or why the allegations of the FAC fail to state a claim for relief. However, the Court grants Defendant's Rule 12(b)(1) Motion to Dismiss the pendent state law claims only because, as discussed below, (1) Plaintiff failed to oppose Defendant's request that the Court decline exercising supplemental jurisdiction over the pendent state law claims and (2) the Court agrees that the state law issues predominate and judicial comity and fairness supports the Court's decision to decline to exercise supplemental jurisdiction.

## A.   By Failing to Respond, Plaintiff Waived Any Argument in Opposition to the Motion.

Local Rule 7.1(f)(3)(a) requires a party opposing a motion to either file a (1) written opposition or (2) "written statement that the party does not oppose the motion." If an opposing party fails to file the papers in the manner required by the local rules, "that failure may constitute a consent to the granting of a motion or other request for ruling by the court." S.D. Cal. Civ. R. 7.1(f)(3)(c); *see also V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 547 (9th Cir. 2019) (noting that claims can be abandoned if their dismissal is unopposed); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment."). As such, for purposes of ruling on this Motion, the Court treats Defendant's arguments as unopposed but examines the merits of those arguments nonetheless.

## B.   Defendant Fails to Argue Why Plaintiff Failed to State a Claim for Relief Under Rule 12(b)(6).

Although Plaintiff's failure to oppose the Motion would justify the Court in granting

-6-

1  it, the Court declines doing so, in part, because Defendant fails to set forth how or why

2  Plaintiff's FAC should be dismissed pursuant to Rule 12(b)(6).

3       "An individual alleging discrimination under Title III must show that: (1) he is

4  disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns,

5  leases, or operates a place of public accommodation; (3) the defendant employed a

6  discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff

7  based upon the plaintiff's disability by (a) failing to make a requested reasonable

8  modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v.*

9  *Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). Here, Plaintiff has alleged

10  that (1) he is disabled and uses a wheelchair, ECF No. 6 at 1:22-26, (2) the defendant is a

11  private entity that owns a place of public accommodation, *id.* at 3:1-2, and (3) Defendant

12  employed a discriminatory practice (e.g., "massive slopes"), *id.* at 3:3-8. The FAC does

13  not explicitly allege that Defendant discriminated against Plaintiff based upon his disability

14  by (a) failing to make a requested reasonable modification that was (b) necessary to

15  accommodate the plaintiff's disability. However, under the ADA, "[i]t shall be

16  discriminatory to subject an individual or class of individuals on the basis of a disability .

17  . . directly, or through contractual . . . arrangements, to a denial of the opportunity of the

18  individual or class to participate in or benefit from the goods, services, facilities, privileges,

19  advantages, or accommodations of an entity." 42 U.S.C. § 12182. Here, Plaintiff alleges

20  that he "could not safely park at this location," as "[t]here was no ADA accessible parking

21  in the lot and plaintiff could not use this parking space without extreme difficulty and

22  discomfort—if he was to able to use it all." *Id.* at 4:2-4, 12. Thus, Plaintiff's allegations

23  create a plausible claim he was discriminated against by virtue of being denied the

24  opportunity to benefit from the goods due to his disability. Further, while there are no

25  explicit allegations that (1) Plaintiff requested the modifications be made and/or (2) the

26  modifications are necessary to accommodate Plaintiff's disability, the Court likewise

27  construes the factual allegations as creating a plausible claim for relief under the ADA.

28       Because, as discussed below, the Court declines the exercise of supplemental

-7-

jurisdiction with respect to the claims brought under the UCRA, the Court declines to analyze whether Plaintiff pled sufficient facts to state a claim for relief as to those claims.

### C. Because the State Law Claims Predominate, the Court Declines Supplemental Jurisdiction.

Defendant correctly argues that not only does the Court have discretion to decline exercising supplemental jurisdiction, but many recent district court decisions are declining the exercising of supplemental jurisdiction in similar cases. ECF No. 8-1 at 5. Defendant also argues that the UCRA state law claims predominate over Plaintiff's ADA claim, and this Court, like many other courts, agrees. *Id.* at 5:1-2.

#### 1. *Plaintiff Has Pled Sufficient Facts to Establish Standing.*

As an initial matter, because standing is a jurisdictional issue, and Defendant moves the Court pursuant to Rule 12(b)(1) for lack of jurisdiction, the Court analyzes Plaintiff's standing. "Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil*, 538 F.3d at 1035 (internal quotations omitted). "[A]s with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement[s] of Article III by demonstrating his standing to sue at each stage of the litigation." *Kashl*, 362 F. Supp. 3d at 872. Establishing standing in ADA cases seeking injunctive relief requires the plaintiff to plead (1) a concrete and particularized injury in fact that is both actual or imminent as opposed to conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's challenged conduct; (3) a likelihood that a favorable decision will redress that injury, and (4) a sufficient likelihood the plaintiff will be wronged in a similar way by showing a real and immediate threat of repeated injury. *EPA*, 966 F.3d at 908; *Kashl*, 362 F. Supp. 3d at 872; *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

In ADA cases, the first prong of standing, or the "injury in fact" requirement, requires the court to determine whether the plaintiff "demonstrated that [his or] her injury was 'actual or imminent' at the time that [he or] she filed [his or] her complaint." *D'Lil*,

-8-

538 F.3d at 1036 (citing *Lujan,* 504 U.S. at 560).  An ADA plaintiff seeking injunctive relief must satisfy this requirement by demonstrating the plaintiff has "a sufficient likelihood that he will again be wronged in a similar way" by establishing "a real and immediate threat of repeated injury." *Fortyune,* 364 F.3d at 1081 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983), and *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974)).  Under the Ninth Circuit's deterrent effect doctrine, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1040 (9th Cir. 2008) (quoting *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1138 (9th Cir. 2002)).  A person need not make a futile effort to encounter a barrier to show injury: "Once a disabled individual has . . . become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts." *Doran,* 524 F.3d at 1042, n.5.

Under the second prong, an ADA plaintiff seeking injunctive relief must show a "real and immediate threat of repeated injury," *Lyons,* 461 U.S. at 102, by establishing a likelihood of returning to the defendant's premises, *Leal,* 2020 WL 5544204, at *2.  The Ninth Circuit has utilized a four-part test to analyze an ADA plaintiff's intent to return, which evaluates (1) the proximity of the place of the public accommodation to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. *Molski v. Mandarin Touch Restaurant,* 385 F.Supp.2d 1042, 1045 (2005) *aff'd in part, dismissed in part sub nom. Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007).  As to the third prong, a plaintiff seeking an injunction requiring a place of public accommodation to comply with the ADA has satisfied the redressability requirement for standing. *Civil Rights Educ.,* 867 F.3d at 1102.

In *D'Lil,* the plaintiff was a paraplegic who, like Plaintiff, required the use of a wheelchair for mobility.  538 F.3d at at 1033.  The plaintiff worked as an "accessibility

-9-

1  consultant," meaning that she contracted "with private attorneys and local governments to

2  evaluate properties for barriers to disabled access." *Id.* at 1034 n. 1. She "traveled from

3  her home in Sacramento to Santa Barbara, California in order to conduct a property

4  inspection for [an] attorney" and encountered numerous barriers to access. *Id.* at 1034.

5  After her trip, she filed suit against the defendant hotel, seeking, like Plaintiff

6  here, "injunctive relief under Title III of the ADA, injunctive relief and damages under

7  California civil rights laws, as well as attorney's fees, litigation expenses, and costs." *Id.*

8  When the plaintiff filed her motion for attorney's fees, the district court, *sua sponte*,

9  expressed concern over whether the plaintiff had standing to sue. *Id.*

10      On appeal, the Ninth Circuit reversed the district court's finding that the plaintiff

11  lacked standing. *D'Lil*, 538 F.3d at 1041. In the context of suits for injunctive relief filed

12  pursuant to the ADA, a plaintiff establishes the "actual or imminent" injury requirement

13  for standing by showing an 'intent to return to the geographic area where the

14  accommodation is located and a desire to visit the accommodation if it were made

15  accessible." *Id.* at 1037. The court reviewed evidence in the record that the plaintiff had

16  given "detailed reasons as to why she would prefer to stay at the Best Western Encina

17  during her regular visits to Santa Barbara" and "testified to three upcoming trips that she

18  was planning to the Santa Barbra area." *Id.* at 1038. As a result, the court concluded that

19  the district court erred in finding that the plaintiff had "failed to provide evidence of her

20  intent to return at the time that she filed suit." *Id.* at 1039. The plaintiff had "established

21  that she suffered an 'actual or imminent' injury sufficient to confer standing." *Id.*

22      Like the *D'Lil* plaintiff, who the Ninth Circuit found to have standing, Plaintiff here

23  has alleged reasons why he would prefer to use the Honey Baked Ham in La Mesa. *See*

24  FAC at 4, ¶ 16 (pleading that "[b]ecause plaintiff could not safely park at this location, he

25  ended up going to the Honey Baked Ham in Clairemont and made his purchase there," but

26  lives "15 minutes from this [the La Mesa] Honey Baked Ham location"). Thus, at least at

27  the pleading stage when courts must liberally construe all allegations in favor of a plaintiff,

28  *Manzarek*, 519 F.3d at 1031, the FAC pleads sufficient facts to establish standing.

-10-

Defendant is correct that other courts have required an evidentiary hearing in ADA cases so the plaintiff may present evidence of an intent to return, especially in cases filed by high frequency litigants. *See, e.g., Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2020 WL 5257868, at *1 (S.D. Cal. Sept. 3, 2020) ("On April 29, 2019, the Court . . . ordered Plaintiffs to show cause why this action should not be dismissed for lack of Article III standing and subject-matter jurisdiction," noting "it would appear that Plaintiffs cannot establish an intent to return or deterrence and therefore lack standing to assert their ADA claims.") (Sammartino, J.). However, courts have also held that if a plaintiff "is going to be disbelieved on the issue of standing, it should be in the context of factfinding, not in the context of a Rule 12(b)(1) motion." *Kashl*, 362 F. Supp. 3d at 876.

For example, in *Kashl*, the court denied the defendant's motion to dismiss for lack of standing, which like the motion here, argued, in part, that "the welter of Plaintiff's other ADA filings, in this judicial district and beyond," belied "a legitimate intent to return to any of the 605 hotels sued in the Californian district courts." *Id.* at 875. However, the court noted that the plaintiff's "professed intentions to visit the other hotels—sincere or otherwise—are not before this Court." *Id.* at 875-76. This is because "[f]or the purposes of this Rule 12(b)(1) motion, the Court is only concerned whether Plaintiff has adduced enough support for the proposition that [he or] she is likely to return." *Id.* at 876. Thus, the *Kashl* court found the plaintiff had adequately alleged an intent to return and denied the motion to dismiss. *Id.*

Here, Plaintiff's allegations satisfy the *Molski* factors by pleading facts as to (1) the proximity of the Honey Baked Ham to Plaintiff's residence, *see* FAC at 4:14 ("Plaintiff lives 15 minutes from this Honey Baked Ham location"); (2) Plaintiff's past patronage of Defendant's business, namely, on July 3, 2020, *id.* at 2:27-28, (3) Plaintiff's plan to return if the barriers are remedies, *id.* at 4:14-18 ("Plaintiff will return to the Honey Baked Ham to avail himself of its goods and to determine compliance with the disability access laws once it is represented to him that the Honey Baked ham and its facilities are accessible"), and (4) Plaintiff's frequency of travel near Defendant, FAC at 4:14-15 (pleading that

-11-

Plaintiff "frequents this area on a constant and ongoing basis"). *Molski*, 385 F.Supp.2d at 1045. Because the Court must accept all well-pled allegations as true on a motion to dismiss, the Court finds that Plaintiff adequately pled an intent to return to establish standing and denies Defendant's Motion to dismiss all claims for failure to state a claim.

2. ***Because State Law Claims Predominate, the Court Declines Exercising Supplemental Jurisdiction.***

Defendants note that since the decision in *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025 (S.D. Cal. 2017) declining the exercise of supplemental jurisdiction over related state law claims in an ADA case, the tide has changed and over 931 cases have favorably cited the decision rejecting supplemental jurisdiction. ECF No. 8-1 at 5:10-14. As such, Defendants ask the Court to decline exercising supplemental jurisdiction.

In federal court, a plaintiff is "the master of the claim," and as such, may choose the forum in which he or she litigates. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, where a plaintiff brings related state law claims in federal court, courts must balance the efficiency of exercising supplemental jurisdiction over related state law claims caused by the preservation of judicial resources with the principles of comity and fairness. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that where "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals"). "Pendent jurisdiction [over state law claims] exists where there is a sufficiently substantial federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims." *Gilder*, 936 F.2d at 421. However, comity represents a valid reason for district courts to decline exercising supplemental jurisdiction where a case involves strong reasons to have state courts interpret state law or the plaintiff has engaged in forum shopping. *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005).

Recently, almost every district judge in the Southern District has declined to exercise

-12-

supplemental jurisdiction over supplemental state law claims in similar cases alleging violations of the ADA and UCRA. *See, e.g., Velez v. Cloghan Concepts, LLC*, 387 F. Supp. 3d 1072, 1078 (S.D. Cal. 2019) (Moskowitz, J.) (declining "to exercise supplemental jurisdiction out of deference to California's heightened pleading requirements for disability lawsuits under the Unruh Act, and in the interest of comity, as California courts should interpret the state's disability laws"); *Cuddeback*, 262 F. Supp. 3d at 1027-32 (Bashant, J.) (declining supplemental jurisdiction over the plaintiff's UCRA claim "as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims"); *Schutza v. McDonald's Corp.*, 133 F. Supp. 3d 1241, 1247-48 (S.D. Cal. 2015) (Hayes, J.) (holding that the state law claims predominated where California accessibility standards provided an independent basis for liability on state law claims, plaintiff alleged intentional discrimination, and the plaintiff sought damages and fees); *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224 (S.D. Cal. 2007) (Lorenz, J.) ("Given the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of 28 U.S.C. § 1367(c)(2)."); *see also Brooke v. Suites LP*, No. 3:20-CV-01217-H-AHG, 2020 WL 6149963, at *5–6 (S.D. Cal. Oct. 19, 2020) (Huff, J.) (declining supplemental jurisdiction over the plaintiff's UCRA claim "because it substantially predominates over her federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping"); *Brooke v. SDMV Hotel Partners LP*, No. 20-CV-1904-CAB-AHG, 2020 WL 5709203, at *2 (S.D. Cal. Sept. 24, 2020) (Bencivengo, J.) (noting that "[o]ver the past five years, Ms. Brooke has filed over 100 disability discrimination cases in this court, including forty-six in 2020 alone," and as such, "the need for California's procedural protections appears particularly acute"); *Leal*, 2020 WL 5544204 at *4–5 (Curiel, J.) ("Numerous district court cases have recognized that exercising supplemental jurisdiction over a high frequency litigant's Unruh Act claims would frustrate California's policy, as codified by statute, of subjecting such claims to stricter pleading standards and allow serial litigants to 'use the federal court system as a

loophole to evade California's pleading requirements.'"); *Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2020 WL 5257868, at *1 (S.D. Cal. Sept. 3, 2020) (Sammartino, J.) (dismissing the second claim for relief for violation of the ADA for lack of standing, after holding an evidentiary hearing, declining to exercise supplemental jurisdiction, and remanding to the superior court); *Rutherford v. JC Resorts, LLC*, No. 19-CV-00665-BEN-NLS, 2020 WL 4227558, at *6 (S.D. Cal. July 23, 2020) (Benitez, J.) (granting the defendant's motion for summary judgment as to the ADA claim and declining to retain supplemental jurisdiction over the UCRA claim); *Whitaker v. Tesla Motors, Inc.*, No. 19-CV-01193-AJB-BLM, 2020 WL 2512205, at *3–4 (S.D. Cal. May 15, 2020) (Battaglia, J.) (declining to exercise supplemental jurisdiction "out of deference to California's heightened pleading requirements for disability lawsuits, and in the interest of comity, as California courts should interpret the state's disability laws."); *Spikes v. Essel Commercial, L.P.*, No. 19CV1592 JM(MSB), 2020 WL 1701693, at *6–8 (S.D. Cal. Apr. 8, 2020) (Miller, J.) (denying the defendants' motion to dismiss the ADA claim under Rules 12(b)(1) and 12(b)(6) while granting it in part as to the state law claims because "[d]eclining supplemental jurisdiction in this case prevents Plaintiff from filing in this court to circumvent the procedural protections present in state court."); *Schutza v. Alessio Leasing, Inc.*, No. 18CV2154-LAB (AGS), 2019 WL 1546950, at *3-4 (S.D. Cal. Apr. 8, 2019) (Burns, Chief J.) (denying the motion to dismiss the ADA claim because the plaintiff had stated a plausible claim for relief under the ADA, but declining to exercise supplemental jurisdiction over the plaintiff's state law claim under the UCRA in the interests of comity and dismissing that claim without prejudice); *Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB, 2018 WL 4385377, at *5 (S.D. Cal. Sept. 14, 2018), *appeal dismissed*, No. 18-56338, 2019 WL 5105466 (9th Cir. Apr. 23, 2019) (Lorenz, J.) (noting that California's "heightened pleading standard acts as a barrier to baseless and vexatious litigation," and where the plaintiff intended to seek the same injunctive relief in both courts, "the distinct advantages plaintiff gains by bringing his Unruh Act claim in federal court is skirting the state-imposed pleading requirements and a lower burden of proof to recover

-14-

money damages"); *Riazati v. Pub. Storage Inc.*, No. 18CV183-MMA (KSC), 2018 WL 733827, at *5 (S.D. Cal. Feb. 5, 2018) (Anello, J.) (declining "to exercise supplemental jurisdiction over Plaintiff's remaining state law claims" because "[i]t appears that Plaintiff's remaining claims are state tort claims governed by California law").   Thus, courts agree that they should decline supplemental jurisdiction where a plaintiff appears to be filing suit in federal court for the purpose of circumventing California state law.

Here, Plaintiff's federal claims arise under the ADA, while the state law claims arise under the UCRA.  As detailed below, in accordance with this district, this Court declines exercising supplemental jurisdiction because (1) state law claims predominate, (2) comity favors having the state court exercise jurisdiction over the state law claims, and (3) compelling interests favor discouraging forum-shopping.

First, in light of the remedies provided under the federal and state laws, the state law claims predominate.  Plaintiff's claims arising under California's UCRA provide more expansive remedies than the claims brought under the ADA, and Plaintiff is pursuing remedies under both laws.  For example, California provides greater protection than the ADA by allowing recovery of money damages, *see Pickern,* 194 F.Supp.2d at 1131, while "the only remedy available under the ADA is injunctive relief," *see Feezor*, 524 F.Supp.2d at 1224-25 (citing 42 U.S.C. § 12188(a)(1); *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir. 2002)).  As a result, the UCRA substantially predominates over the ADA claim because the ADA claim "appears to be a second claim included to justify filing the complaint in this Court, rather than a necessary (let alone predominant) claim in this lawsuit."  *Brooke v. Crestline Hotels & Resorts LLC.*, No. 20-cv-301-CAB-AGS, 2020 U.S. Dist. LEXIS 34001, at *3 (S.D. Cal. Feb. 25, 2020).

Second, comity favors declining supplemental jurisdiction because the federal and state law claims may require different proof, and the state law claims are subject to a heightened pleading standard. "[I]n 1992, the California Legislature amended California Civil Code Section 51 and added a provision that a defendant violates the Unruh Act whenever it violates the ADA." *Feezor*, 524 F.Supp.2d at 1224–25 (citing Civ. Code §

51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–3361) shall also constitute a violation of this section."). Thus, a violation of the ADA violates the UCRA, but a violation of the UCRA does not necessarily violate the ADA. Further, another important distinction between the federal and state law claims is that while a violation of the ADA does not require intentional discrimination, a claim under the UCRA may require such an intent. *McDonald's*, 133 F. Supp. 3d at 1247. Thus, intent to discriminate would only be relevant to the Plaintiff's UCRA discrimination claims and would require application of state law standards. *See, e.g., Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004) ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA.") "When federal courts consider claims under state law, they are to apply federal procedural law and state substantive law." *O'Campo v. Chico Mall, LP*, 758 F.Supp.2d 976, 984-85 (E.D. Cal. 2010) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Here, given various issues of proof require application of state law, comity favors having a state court, familiar with such standards, resolve those issues.

Third, compelling interests of comity as well as discouraging forum shopping support this Court's decision to decline exercising supplemental jurisdiction over the UCRA claims. *See Gibbs*, 383 U.S. at 726 (holding that comity is a factor to be considered before exercising supplemental jurisdiction). "California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes." *Suites LP*, 2020 WL 6149963 at \*5-6. "In 2012, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act, including provisions requiring high-frequency litigants to verify and specify their allegations." *Cuddeback*, 262 F. Supp. 3d at 1031-32 (citing CAL. CODE CIV. PROC. § 425.50). Under this standard, "[e]xcept in complaints that allege physical injury or damage to property, a complaint filed by or on behalf of a high-frequency litigant" must state: (1) "[w]hether the complaint is filed by, or on behalf of, a high-frequency litigant"; (2) "the number of complaints . . . alleging a construction-related accessibility claim that

-16-

the high-frequency litigant has filed during the 12 months prior to filing the complaint";

and (3) "the reason the individual was in the geographic area of the defendant's business."

CAL. CODE CIV. PROC. § 425.50(a)(4) (noting that "high-frequency litigant" has the same

meaning as set forth in subdivision (b) of Section 425.55"); *see also* CAL. CODE CIV. PROC.

§ 425.55(b) (defining a "high-frequency litigant" as either a plaintiff or attorney "who has

filed 10 or more complaints alleging a construction-related accessibility violation within

the 12-month period immediately preceding the filing of the current complaint alleging a

construction-related accessibility violation").  "The purpose of these heightened pleading

requirements is to deter baseless claims and vexatious litigation." *Cuddeback*, 262 F. Supp.

3d at 1031.  In 2015, "[t]he Unruh Act was amended again . . . to implement additional

procedural requirements for 'high-frequency litigants," requiring individuals who have

filed more than 10 accessibility-related complaints in the previous years, like Plaintiff, "to

pay additional filing fees and plead even more specific information in their complaints,

such as 'the reason the individual was in the geographic area of the defendant's business.'"

*Alessio Leasing*, 2019 WL 1546950 *3 (citing CAL. CIV. PROC. CODE § 425.50(a)(4)(A)

(effective October 10, 2015)).  "Unfortunately for California, its courts rarely get to

interpret the meaning and application of these provisions because creative plaintiffs are

able to evade the heightened standards by bootstrapping an Unruh Act claim to a

federal ADA claim, taking advantage of the lower pleading standards that come with it."

*Id.*  While there is nothing *per se* improper with a plaintiff's desire to proceed in federal

court, there appears to be no reason to do so when "[t]he only relief available under

the ADA is injunctive relief, which can also be secured in state court." *Id.* "Thus, 'it would

be improper to allow Plaintiff to use the federal court system as a loophole to evade

California's pleading requirements.'" *Suites LP*, 2020 WL 6149963, at *5–6; *see

also Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp.

2d 1120, 1132 (S.D. Cal. 2005) ("Because a legitimate function of the federal courts is to

discourage forum shopping and California courts should interpret California law . . .

compelling reasons exist to decline supplemental jurisdiction").

In *Schutza v. Cuddeback*, this district court held that the plaintiff's state law claim substantially predominated over his ADA Title III claim, and as such, judicial economy, convenience, fairness, and comity warranted the court declining supplemental jurisdiction over the UCRA claims. 262 F. Supp. 3d at 1027-32. Mr. Schutza,[1] like Plaintiff, is a paraplegic who uses a wheelchair for mobility and filed a lawsuit alleging "he was unable to access or use the property because of various access barriers, including barriers in the parking lot, at the entrance door, in the establishment itself, and in the restroom area." *Id.* at 1027-28. Also like Plaintiff, Mr. Schutza filed suit seeking monetary damages under the Unruh Act and injunctive relief under the ADA. *Id.*

The *Cuddeback* court noted that PACER records revealed that Mr. Schutza had (1) been a plaintiff in 127 cases as of March 27, 2017 alleging disability discrimination and (2) settled 56 disability cases since 2015. 262 F. Supp. 3d at 1031, n. 4-5. It reasoned that "[a]s a high-frequency litigant primarily seeking relief under state law, . . . it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements" by exercising supplemental jurisdiction. *Id.* The court also agreed with the defendants' "contention that Plaintiff is engaging in forum-shopping by bringing his action in federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims." *Id.* at 1031 ("It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act"); *see also Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965) (providing that federal courts may take measures to discourage forum-shopping); *Brick Oven*, 406 F.Supp.2d at 1132 (noting that "[b]ecause a legitimate function of the federal courts is to

---

1    Scott Schutza, like Plaintiff, is also a "frequent flyer" in the Southern District, who notably is also represented by Plaintiff's counsel, Potter & Handy, LLP. Some courts have noted that repeated actions filed by the same plaintiffs and counsel call into question the integrity of the bar, injures the public's view of the courts, and most importantly, creates backlash against the disabled, "who rely on the ADA as a means of achieving equal access." *Doran*, 373 F.Supp.2d at 1031.

-18-

1    discourage forum shopping and California courts should interpret California law").

2         As another example, in *Rutherford v. Leal*, the Court recognized that the plaintiff's

3    "ADA and Unruh Act claims arise out of the same facts and require application of similar

4    standards, and that exercising supplemental jurisdiction would allow these claims to be

5    heard together in federal court." 2020 WL 5544204, at *4–5. However, the court noted

6    that "exercising jurisdiction over Plaintiff's Unruh Act claim would undermine the

7    procedures established for hearing such claims in California." *Id.* This was because "[i]t

8    would be unfair to allow Plaintiff to enjoy 'those parts of California law that benefit him

9    while disallowing the parts purposefully enacted to protect Defendants.'" *Id.* Thus, the

10   Court found that "California's enhanced pleading requirement for high frequency litigants

11   like Plaintiff is a compelling reason to decline the exercise of supplemental jurisdiction in

12   this case." *Id.* It also noted that the state law claims predominated over the federal claims

13   because the remedies and proof are different in ADA and UCRA claims. *Id.* at *4-5. "A

14   court may dismiss state law claims when 'in terms of proof, of the scope of the issues

15   raised, or of the comprehensiveness of the remedy sought,' the state law claims

16   substantially predominate over the federal claims." *Id.* at *4. It reasoned that other

17   "district courts have found plaintiffs' state law claims to predominate over their federal

18   ADA claim where they seek significant damages under state law and allege legal theories

19   applicable only to state law claims." *Id.* The court concluded by declining supplemental

20   jurisdiction and finding the UCRA claim substantially predominated over the ADA claim

21   "[i]n light of the potential for Plaintiff to seek far greater state law damages and his

22   inclusion of a state-law specific legal theory." *Id.* at *5.

23        Here, Plaintiff's FAC, like the complaints in *Cuddeback* and *Leal*, failed to include

24   allegations by Plaintiff and his counsel regarding their status as high-volume litigants that

25   would have otherwise been required under California law. *See* ECF No. 1, 6. This Court

26   recently took judicial notice of the fact that Plaintiff "Chris Langer is a plaintiff in 1,498

27   federal cases." *See Langer v. Kiser*, No. 318CV00195BENNLS, 2020 WL 6119889, at *3

28   (S.D. Cal. Oct. 16, 2020) (noting that "PACER shows a total of 1,498 cases in which the

-19-

plaintiff is named 'Chris Langer' throughout all courts on PACER"). Since the court took judicial notice of that fact, Public Access to Court Electronic Records ("PACER") shows that Plaintiff has filed an additional ten lawsuits. Thus, the Court takes judicial notice of the fact that as of the date of this order, PACER shows a total of 1,508 cases in which the plaintiff is named Chris Langer. *See, e.g.*, FED. R. EVID. 201(b)(1)-(2) (providing that at any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records). Accordingly, the Court, like the *Cuddeback* and *Leal* courts, questions the propriety of exercising supplemental jurisdiction over the state law claims where Plaintiff has failed to comply with California's heightened pleading requirements for high-volume litigants, like Plaintiff. Given Plaintiff could seek the more rewarding remedies (e.g., money damages) in state court as well as injunctive relief (the only relief available in federal court), filing in federal court seems to be strategic avoidance of the heightened-pleading requirements that would otherwise need to be met in state court. *See, e.g.*, *Alessio Leasing*, 2019 WL 1546950, at *4 (noting that "there is no relief available to Schutza in federal court that could not be secured in state court"). Further, just as the *Leal* court noted that different remedies require different proof, Plaintiff here likewise seeks different remedies that require different proof.

Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims brought under the UCRA and dismisses those claims *without prejudice* to Plaintiff re-filing them in state court. *See, e.g.*, *Molski v. Foster Freeze Paso Robles*, 267 F. App'x 631, 633 (9th Cir. 2008) (noting that although a court may decline to exercise supplemental jurisdiction over state law claims, when it does, it must dismiss those claims without prejudice).

-20-

**V.    CONCLUSION**

For the above reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion as follows:

1.    Defendant's Motion to Dismiss Plaintiff's first claim for relief for violation of the ADA is **DENIED** as Defendant failed to set forth how or why Plaintiff failed to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As pled, the Court finds the SAC pleads sufficient facts to state a claim for relief under the ADA.

2.    Defendant's Motion to Dismiss Plaintiff's second claim for relief for violation of the UCRA is **GRANTED** on the basis that the Court declines to exercise supplemental jurisdiction over those claims.   All claims pertaining to violation of the UCRA are dismissed *without prejudice* to being refiled in a California superior court.

**IT IS SO ORDERED.**

DATED:    November 04, 2020

_____

HON. ROGER T. BENITEZ
United States District Judge

-21-